In the Matter of AMOCO PETROLEUM ADDITIVES COMPANY and Buck Isbell, Petitioners.

In the Matter of Robin A.G. JACKSON, an Underwriter at Lloyd's, London, et al., Petitioners.

Nos. 92–1649, 92–1676.

United States Court of Appeals, Seventh Circuit.

Submitted April 2, 1992.

Decided May 21, 1992.

Robert A. Knuti, Jane H. Veldman, R.R. McMahan, Lord, Bissell & Brook, Chicago, Ill., Thomas C. Walsh, Rebecca Jackson, Sabrina M. Wrenn, Bryan Cave, St. Louis, Mo., and Neil L. Brilliant, Amoco Corp., Chicago, Ill., for petitioners.

Douglas J. Klingberg, Ruder, Ware & Michler, Wausau, Wis., Lawrence T. Hofmann, Timothy W. Regan, Dale I. Larson, Robert M. Wattson, Zelle & Larson, Minneapolis, Minn., and John T. Papa, Pratt & Callis, Granite City, Ill., for respondents.

Before FLAUM, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Two petitions for mandamus present questions concerning review of orders remanding cases to state court.

I

Employees working in a laboratory in Wood River, Illinois, complained to management that Kathryn Gullick and Dennis Cheatham, a supervisor, were visiting the women's locker room together during working hours. Amoco Petroleum Additives Company, the employer, installed a video camera in the ceiling of the entrance hallway, which enabled the firm to record who entered and left the locker room, and when, but not what they were doing inside. The videotape recorded one instance of a joint Gullick–Cheatham visit. Local No. 7–776 of the Oil, Chemical and Atomic Workers International Union, AFL–CIO, filed suit in state court seeking an order restraining the operation of the camera; "Jane Doe" sought damages for invasion of privacy and intentional infliction of emotional distress. Defendants (Amoco and one of its managers) removed the case to federal court, contending that despite the state-law veneer the suit required the court to interpret the collective bargaining agreement, creating federal jurisdiction and a right to remove under 28 U.S.C. § 1441(b).

Plaintiffs asked the district judge to remand the case, contending that it is based on state law and so may not be removed. (Amoco does not contend that the parties are of diverse citizenship.) On January 17, 1992, the district court entered this handwritten order: "Before the Court is plaintiff's motion to remand. Having considered the premises contained in the plaintiff's motion, briefs, and heard oral argument, plaintiffs motion is Denied." The court gave no explanation. After taking some discovery, Amoco filed a motion for summary judgment. Plaintiffs opposed the motion and also altered the lineup of parties. The union dropped out, and eight female employees (including Gullick) replaced "Jane Doe." The new plaintiffs filed a motion to remand. More briefs and another oral argument ensued, and on March 6 the court entered this handwritten order:

Case called on Δ's Motion for Summary Judgment and π's Second Motion for Remand. Ct considers the Motion for Remand initially. Arguments heard and the Court being fully advised the Motion to Remand is granted. The Court does not consider Δ's Motion for Summary Judgment as it does not have jurisdiction.

Again the judge furnished no explanation. Amoco lodged its petition for mandamus, which has been briefed.

## A

■ An order remanding a case to state court is not appealable—not only because the case continues, see *Insurance Co. v. Comstock*, 83 U.S. (16 Wall.) 258, 270, 21 L.Ed. 493 (1873); *Railroad Co. v. Wiswall*, 90 U.S. (23 Wall.) 507, 23 L.Ed. 103 (1875); *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 352–53, 96 S.Ct. 584, 593–94, 46 L.Ed.2d 542 (1976), but also because of 28 U.S.C. § 1447(d), which provides:

> An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.

Amoco did not remove under § 1443, so a straightforward reading of § 1447(d) leads to the conclusion that we lack power to act, for mandamus is the "or otherwise" of which § 1447(d) speaks.

"Straightforward" is about the last word judges attach to § 1447(d) these days, however. *Thermtron* holds that § 1447(d) does not mean what it says, that it forbids mandamus only when the judge relies on § 1447(c), which provides the exclusive reasons for remand. Remand on an unauthorized ground produces an automatic writ of mandamus, while even an obviously erroneous invocation of § 1447(c) is untouchable. *Gravitt v. Southwestern Bell Telephone Co.*, 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977). Then *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), held that *Thermtron* does not mean what *it* says—that district courts sometimes *may* remand cases on grounds unmentioned in § 1447(c). When they do so, review by mandamus remains a possibility. *Carnegie–Mellon* approved a remand of state claims after the plaintiff dropped all federal claims. That leaves us with three categories: (1) remands on grounds listed in § 1447(c) and beyond the power of appellate review; (2) remands on grounds not listed in § 1447(c) but nonetheless sometimes proper, and reviewable to decide whether this is one of those times; (3) remands not authorized by § 1447(c) or anything else, and subject to automatic mandamus. Figuring out which remands fall into which categories is a difficult task, as a series of our cases illustrates. See *Hernandez v. Brakegate, Ltd.*, 942 F.2d 1223 (7th Cir.1991); *J.O. v. Alton Community Unit School District 11*, 909 F.2d 267, 269–71 (7th Cir.1990); *Rothner v. Chicago*, 879 F.2d 1402 (7th Cir.1989). Complex proceedings just to determine whether a remand is reviewable by the court of appeals defeat the speed and simplicity that one would have thought to be the principal justification for § 1447(d).

Section 1447(c) calls on a court to remand a case "on the basis of any defect in removal procedure" or whenever "it appears that the district court lacks subject matter jurisdiction". Why did Judge Beatty remand this case? He did not say. Even his second order, which mentions jurisdiction, may mean only that *after* the remand the court lacks jurisdiction and so cannot adjudicate the motion for summary judgment. But the only reason we can imagine, and the only one the parties discuss, is lack of subject-matter jurisdiction.

■ The dispositive question is: "When?" Was there subject-matter jurisdiction at the time of removal, vanishing because of the change in the identity of the plaintiffs? If so, we have a replay of *Carnegie–Mellon* and may review the remand order. Well, not quite a replay, for that case involved the remand of pendent state claims after the resolution of the federal claim. Here there are no pendent claims; the parties dispute whether the claims rest on state or federal law. But we understand *Carnegie–Mellon* to permit review when the district judge believes that removal was proper and that later developments authorize remand. If the judge believed that subject-matter jurisdiction was missing at the outset, however, § 1447(d) puts the remand beyond our ken.

Unfortunately, the district judge did not reveal whether he believes that jurisdiction has been missing all along, or whether instead the case was properly removed but jurisdiction is no longer present. Appellate

judges are no better than average mind readers, which creates difficulties in reviewing unexplained acts. Still, it is hard to understand the court's order of January 17, refusing to remand the case, if it believed the removal improper. The only way to make the two orders consistent is to assume that the judge believed that so long as the union was a plaintiff, there was federal-question jurisdiction, which vanished when the union dropped out. If that was indeed the court's approach, then we may review the order by mandamus, properly asserted here in aid of our (eventual) appellate jurisdiction if indeed the case comes within federal subject-matter jurisdiction.

## B

■ Whether this case comes within the subject-matter jurisdiction of the federal courts depends on a doctrine misleadingly known as "complete preemption." When federal law occupies a field, state rules are preempted. But preemption is just a defense, and federal defenses to claims based on state law are adjudicated in state court. There is no general right of federal-defense removal. When national law is so pervasive that it is impossible even to state a claim based under state law, though, a court treats the attempt to do the impossible as equivalent to a spelling error, which does not affect the body of law invoked by the complaint. See *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Franchise Tax Board of California v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22, 103 S.Ct. 2841, 2852, 77 L.Ed.2d 420 (1983); *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073 (7th Cir.1992).

Federal law so dominates relations between employers and unions that the Supreme Court treats any attempt to interpret, enforce, or question a collective bargaining agreement as necessarily based on national law—in this case, § 301 of the Labor–Management Relations Act, 29 U.S.C. § 185. "[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute." *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881–82, 100 L.Ed.2d 410 (1988). Substantive federal principles permit removal under the federal-question jurisdiction. *Id.* at 406 n. 5, 108 S.Ct. at 1881 n. 5; *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 209, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985). The nature of the claim, not the identity of the plaintiff, determines federal jurisdiction.

Plaintiffs maintain that their claims for invasion of privacy and infliction of emotional distress do not depend on the meaning of the agreement between the union and Amoco. Defendants reply that surveillance in the workplace is one of the standard conditions of employment, either regulated by agreement or reserved to management's discretion by a management-rights clause. Plaintiffs concede that a collective bargaining agreement could authorize surveillance but observe that there is not one word in the compact about cameras, locker rooms, or surveillance in general. Amoco does not find this surprising, because on its view the subject is covered by the management-rights language. As Amoco sees things, everything that is neither regulated nor forbidden by the collective bargaining agreement is committed to its discretion by this residual clause. Thus "resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement", which transmutes state to federal law.

Amoco has the better of this argument. A state court could not award damages without first construing the collective bargaining agreement and rejecting Amoco's interpretation of the management-rights clause. *Lingle* held that to adjudicate a claim that the employer retaliated against a worker who had asserted rights under state workers' compensation legislation is not to interpret the collective bargaining agreement. Workers' compensation laws exist outside collective bargaining; no

agreement may vary them. Privacy in the workplace, by contrast, is an ordinary subject of bargaining. The extent of privacy is a "condition" of employment. Even agreements that do not mention surveillance expressly may deal with the subject by implication. If Amoco were to discipline Gullick or Cheatham, the union could file a grievance and take the complaint to arbitration. An arbitrator, we doubt not, could overturn any discipline if he believed the surveillance unjustified. Damages remedies under state law would disrupt this process of accommodation and interpretation.

*Kirby v. Allegheny Beverage Corp.,* 811 F.2d 253 (4th Cir.1987), holds that a claim of invasion of privacy in the workplace necessarily rests on federal labor law. Although decided before *Lingle,* this opinion uses the same approach, expressly concluding that adjudication of the claim would require interpretation of the collective bargaining agreement. 811 F.2d at 256. *Stikes v. Chevron USA, Inc.,* 914 F.2d 1265 (9th Cir.1990), takes the same view of a claim that the employer violated a worker's privacy by demanding that the worker consent to a search of his car. As *Stikes* noted, state-law invasion-of-privacy claims depend on proof that the defendant invaded an objectively reasonable expectation of privacy. 914 F.2d at 1269. What expectations of privacy in the workplace are objectively reasonable depends on powers and duties specified in the collective bargaining agreement.

A series of drug testing cases reinforces this conclusion. Several courts have held that federal rather than state law governs employees' privacy-based objections to drug tests—and this whether or not the collective bargaining agreement expressly mentions drug tests. E.g., *Jackson v. Liquid Carbonic Corp.,* 863 F.2d 111 (1st Cir. 1988); *Laws v. Calmat,* 852 F.2d 430 (9th Cir.1988); *Utility Workers v. Southern California Edison Co.,* 852 F.2d 1083, 1085–87 (9th Cir.1988). Cf. *Bolden v. Southeastern Pennsylvania Transportation Authority,* 953 F.2d 807, 826–29 (3d Cir.1991) (in banc) (unions may compromise employees' privacy claims, including objec-

tions to drug tests). Although based on the Railway Labor Act, *Conrail v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989), offers support for the conclusion. *Conrail* holds that objections to drug testing are "minor disputes" in the RLA's parlance— that is, disputes about the interpretation or application of an existing agreement. Although the labor agreement between Conrail and its unions did not mention drug tests, the Court held the dispute "minor" because "collective-bargaining agreements may include implied, as well as express, terms." *Id.* at 311, 109 S.Ct. at 2485. Implied terms include the norms of the shop. Because the railroad asserted a customary right to alter physical testing rules, the Court held that the dispute required interpretation of the agreement. Just so here: Amoco claims both a customary right to monitor employees' movements in the workplace and a contractual preservation (through the management-rights clause) of that entitlement. No more is necessary to make this a federal case.

Once the invasion-of-privacy claim is brought under § 301, the case is removable. A single federal claim suffices to support removal. 28 U.S.C. § 1441(c). As it happens, though, the claim for infliction of emotional distress can be brought under § 301 in the same fashion. *Douglas v. American Information Technologies Corp.,* 877 F.2d 565, 572 (7th Cir.1989). Cf. *Sluder v. United Mine Workers,* 892 F.2d 549, 552–53 (7th Cir.1989).

Whether defendants are entitled to summary judgment is a question for the district court in the first instance. The petition for a writ of mandamus is granted. The district court shall vacate the order remanding the suit to state court and shall decide the case on the merits.

## II

■ Employers Insurance of Wausau entered into reinsurance treaties with many underwriting syndicates at Lloyd's of London and other domestic and foreign rein-

surers. These treaties provide that the parties will arbitrate their disagreements. Since 1988 the reinsurers have declined to reimburse Wausau for payments on asbestos claims. Wausau invoked the arbitration clauses of the treaties, and when the reinsurers did not reply fast enough Wausau petitioned a state court to direct arbitration before two arbitrators Wausau had selected (these two would appoint a third). The complaint, filed on August 19, 1991, named as defendants many syndicates at Lloyd's plus corporations from Brazil, France, Germany, Italy, Japan, Portugal, Switzerland, Turkey, and the United Kingdom, as well as the United States. On September 9 all of the syndicates, joined by all but three of the corporations, filed a petition asserting that the parties are of diverse citizenship and removing the case under § 1441(b) [sic: should be § 1441(a)]. We call the defendants who sought to remove the case "the Reinsurers." Wausau filed a motion to remand, contending, first, that by the insurance treaties the Reinsurers had waived any right to remove and, second, that the unexplained omission of three defendants spoiled the removal and called for remand under § 1447(c) on account of a "defect in removal procedure".

As a rule, removal requires a petition joined by all defendants. *Northern Illinois Gas Co. v. Airco Industrial Gases,* 676 F.2d 270, 272 (7th Cir.1982). Nominal parties need not join the petition, *ibid.,* and the Reinsurers initially insisted that the three defendants that had not joined the petition are nominal. This contention has dropped out of the case, for nothing suggests that the three (El Banco, St. Helens Insurance Co., and La Preservatrice Fondore Assurances) are anything other than full participants in the reinsurance treaties. They are not "nominal" defendants, mere bystanders or formal parties. They have refused to respond to Wausau's demand for arbitration, to answer the complaint, or to join the petition for removal, but an obdurate litigant is not on that account a nominal one.

On November 29, 1991, the Reinsurers asked leave to amend their petition for removal to allege 9 U.S.C. § 205 as the proper basis. This statute, part of legislation ratifying the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A.S. 6997, provides:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. For the purposes of Chapter 1 of this title [the Federal Arbitration Act] any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed.

Because defendants may remove "at any time before the trial", the Reinsurers contended that they may amend a defective petition for removal at any time. The district judge disagreed, holding that a "defect in removal procedure" requires remand unless the petition is promptly amended to cure the defect—and this amendment, Chief Judge Crabb concluded, was belated. Her opinion laid out the arguments pro and con and limited the remand to the defect in the petition; she withheld judgment on Wausau's claim of waiver by contract.

After the court denied a petition for clarification on January 13, 1992, the case returned to state court. Before the state judge could act, however, the Reinsurers filed another petition for removal. This document, lodged on January 30, invokes § 205 rather than § 1441 and asserts that the omission of the three intractable firms is irrelevant. On March 23 the court remanded for a second time. 787 F.Supp. 165 (W.D.Wis.1992). Once again supplying a clear and thoughtful explanation, the

judge held that § 205 does not authorize removal by fewer than all defendants. The reference to "the defendant or the defendants" implies that all must join a petition to remove, as does the adoption of the "procedure for removal of causes otherwise provided by law". Because three of the defendants have disdained the opportunity to remove, a "defect in removal procedure" requires remand. Moreover, the judge added, the case must be remanded because defendants have only one opportunity to remove. That a petition under § 205 may be filed any time before trial does not imply that defendants may keep filing petitions until they finally get it right. More than one petition unduly disrupts the progress of the case, the court held.

Section 205 incorporates the "procedure for removal of causes otherwise provided by law". This means title 28, chapter 89, of the United States Code, 28 U.S.C. §§ 1441–52. In particular it means § 1447(c), authorizing remand for defects in the removal procedure, and § 1447(d), blocking appellate review of remands under § 1447(c). This much the Reinsurers concede. Nonetheless they ask us to issue a writ of mandamus, contending that the district court misinterpreted § 205.

Although Congress enacted § 205 in 1970, there has been almost no litigation about its meaning. *McDermott International, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199 (5th Cir.1991), the only significant decision interpreting § 205, holds that parties may waive their right to remove under that section but only by express language. A general forum-selection clause, of the sort in the reinsurance treaties there (and here), does not bar removal. Chief Judge Crabb did not use the language of the treaties as the foundation for remand, but *McDermott* is still of some interest—for it holds that review of remand orders is by appeal under 28 U.S.C. § 1291 rather than by mandamus. 944 F.2d at 1201–04. As the Reinsurers seek mandamus and have not filed a notice of appeal, *McDermott* is a potential obstacle.

*McDermott* believed that a remand on the authority of a contractual forum-selection clause is reviewable as a "collateral order" under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The fifth circuit relied on *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), which accepted an appeal from an order staying proceedings in the litigation, when that order had the practical effect of dismissal. A remand is even more effective in ending the federal court's role, *McDermott* observed. True enough, but the point of *Moses H. Cone* was that the litigation was (effectively) over, while a remand, like a transfer under 28 U.S.C. § 1404, continues the litigation in another forum.

Twice the Supreme Court has held that remands are not appealable as final decisions. See *Comstock* and *Wiswall*. *Cohen* does not inter these cases; no subsequent decision questions them; *Thermtron* cites both with approval and observes that mandamus is a proper way to obtain any review not precluded by § 1447(d). 423 U.S. at 352–53, 96 S.Ct. at 593–94. *Carnegie–Mellon* also involved a writ of mandamus rather than an appeal, and it was the principle of *Carnegie–Mellon* that avoided § 1447(d) in *McDermott*. Two cases the fifth circuit did not mention hold that orders identifying the appropriate forum for the case are not appealable under *Cohen*. See *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989); *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988).

*Lauro* is particularly close to *McDermott*, for the Court held that an order interpreting a forum-selection clause and selecting the place for litigation is *not* appealable before trial. The fifth circuit treated the policy allowing liberal removal under § 205 as an argument in favor of appellate review; the Supreme Court in *Lauro* deemed the equally strong federal policy favoring the enforcement of forum-selection clauses as an argument on the merits rather than a justification of appel-

late review. 490 U.S. at 501, 109 S.Ct. at 1980. Our own opinion in *Rothner*, 879 F.2d at 1418–19, concludes that mandamus is the appropriate way to obtain review of remand orders. *McDermott* does not persuade us that *Rothner* is wrong or that *Wiswall* and *Comstock* are no longer binding.

It is mandamus or nothing—a distinction that makes a difference in light of the discretionary character of mandamus. Expeditious action on the motions papers allows the case to continue, while briefing and argument of an appeal consume many months. This suit, seeking nothing but an order to arbitrate, has been paralyzed since August 1991, and more delay lies in store if we set the case for argument next fall as an ordinary appeal. Arbitration is supposed to be quick. Litigation about arbitration frustrates that objective. Litigation about *where to litigate* about arbitration mocks that objective.

Having cleared away the underbrush, we can be brief. First, § 1447(d) applies and precludes appellate review. Second, we would not issue a writ of mandamus even if we possessed the power to do so. The two points are related. The district court expressly found that the removal was procedurally defective because the petition was not joined by all parties. A defect in removal procedure authorizes remand, and § 1447(d) then bars review. *Rothner* holds that a defect in removal procedure means failure to comply with one of the requirements in § 1446. Our opinion in *Airco*, on which Chief Judge Crabb relied, holds that the participation of all defendants is a condition of an effective notice of removal under § 1446(a). All of the Reinsurers' arguments that the district court erred in holding that § 205 does not change this rule are beside the point. A search for error is precisely what § 1447(d) forbids. "[I]f the district court gives a reason authorized by statute, courts of appeals may not inquire whether the court erred." *Hernandez*, 942 F.2d at 1226.

Whatever doubt remains we resolve by exercising any discretion against issuing a prerogative writ. The district judge issued two careful opinions explaining why the attempted removals are defective. If these orders are incorrect, the error is not so apparent that the petitioners' right to relief is clear. Mandamus is not the appropriate means to resolve doubtful issues of procedure or statutory construction. *Mallard v. United States District Court*, 490 U.S. 296, 308–09, 109 S.Ct. 1814, 1821–22, 104 L.Ed.2d 318 (1989); *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980); *Kerr v. United States District Court*, 426 U.S. 394, 402–03, 96 S.Ct. 2119, 2123–24, 48 L.Ed.2d 725 (1976). An applicant for mandamus must establish a "clear abuse of discretion," *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953), or conduct amounting to "usurpation of power," *De Beers Consolidated Mines, Ltd. v. United States*, 325 U.S. 212, 217, 65 S.Ct. 1130, 1133, 89 L.Ed. 1566 (1945). Thoughtful resolution of novel questions under an untested statute is some distance from these pejorative phrases.

Instead of seeking immediate review of the first order remanding the case, the Reinsurers tried again in the district court and then came here. They seem fixed on prolonging rather than resolving this contest. It is time to get down to the merits. Wisconsin will decide the meaning of the treaties; interpretation of contracts is a staple of business in state courts. The Reinsurers do not contend that Wisconsin disfavors arbitration or that any other doctrine or practice used there would inhibit prompt and accurate resolution of the parties' dispute. Eight months of litigation about where to litigate is plenty. The petition for a writ of mandamus is denied.