In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1320

In re
Bentz Metal Products Company, Inc.,

Debtor-Appellee,


Appeal of:  Larry Faehnrich, et al.,

Plaintiffs-Appellants,

v.

Bentz Metal Products Company, Inc.
and NBD Bank, N.A.,

Defendants-Appellees.



Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 99-C-449--William C. Lee, Chief Judge.



Argued September 7, 2000--Decided November 6, 2000



Before Bauer, Posner, and Evans, Circuit Judges.

Bauer, Circuit Judge.  Plaintiffs-Appellants ("employees"), former employees of debtor Bentz Metal Products Company, Inc. ("Bentz"), appeal from the order of the United States District Court for the Northern District of Indiana, Fort Wayne Division, affirming the judgment of the Bankruptcy Court of the Northern District of Indiana, Fort Wayne Division, which held that the employees' mechanic's liens, filed under Indiana Code sec. 32-8-3-1 et seq., for unpaid vacation pay were invalid because of the preemptive effect of sec. 301 of the Labor Management Relations Act ("LMRA") of 1947, 29 U.S.C. sec. 185(a). For the foregoing reasons, we affirm the judgment of the district court.

BACKGROUND
     The employees were members of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local 2298. The terms and conditions of their employment with Bentz were governed by a collective bargaining agreement ("CBA"),

effective between March 11, 1994 and November 17, 1996.

On January 17, 1996, an involuntary bankruptcy petition under 11 U.S.C. sec. 303 was filed against Bentz. The case was converted to a Chapter 11 proceeding, and then later reconverted to a Chapter 7 proceeding. Upon the cessation of manufacturing by Bentz, the employees timely filed mechanic's liens seeking unpaid vacation pay owing to them under the CBA. All parties stipulated that the amount of vacation pay owed to the employees, according to a schedule set forth in the CBA, totals $12,700.38. The employees then filed an Adversary Proceeding in Bankruptcy Court to determine the validity, extent, and priority of the liens, naming Bentz and NBD Bank, Bentz's secured lender, as defendants. Relying on In re Bluffton Casting Corp., 186 F.3d 857 (7th Cir. 1999), the Bankruptcy Court held that sec. 301 of the LMRA preempted the employees' mechanic's liens because "these liens are for monies that stem from the [CBA]." Summ. J. Hr'g Tr., Sept. 27, 1999, at 2. The district court affirmed, and we affirm as well.

DISCUSSION

Since the facts are not in dispute, our review of the lower court's conclusions of law is de novo. See In re Yonikus, 974 F.2d 901, 903-04 (7th Cir. 1992). This case, like many before it, arises because there are insufficient assets to satisfy all creditors. The issue framed by the parties is whether sec. 301 of the LMRA preempts the employees' Indiana mechanic's liens for vacation pay entitlements owed under the CBA. The consequences of preemption in this case, simply stated, are: if the employees' liens are valid, then they are superior to NBD Bank's security interests; however, if the liens are preempted, then NBD Bank will apply the $12,700.38 to their claims against Bentz. Let us follow the trail of the various laws on the subject and see if we can resolve the interesting question (always an interesting question!) of who gets the money.

Congress exercised its power under the Supremacy Clause of the United States Constitution to enact sec. 301 of the LMRA, which reads:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to

the citizenship of the parties.

29 U.S.C. sec. 185(a). It is axiomatic that this jurisdictional provision authorizes federal courts to develop federal common law for the enforcement of CBAs. See United Steelworkers v. Rawson, 495 U.S. 362, 368 (1990); Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 403 (1988); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985); Complete Auto Transit, Inc. v. Reis, 451 U.S. 401, 405 (1981); Teamsters v. Lucas Flour Co., 369 U.S. 95, 103-04 (1962); Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 449-56 (1957); In re Amoco Petroleum Additives Co., 964 F.2d 706, 709 (7th Cir. 1992). This promotes uniformity because "any attempt to interpret, enforce, or question a [CBA is] necessarily based on national law . . . ." Amoco, 964 F.2d at 709. A body of uniform law is particularly important in enforcing arbitration provisions, a staple of most CBAs. See Lingle, 486 U.S. at 410-11. The Supreme Court, however, has made clear that state law claims are not automatically preempted in every case involving a CBA. Claims independent of or tangentially involving a CBA are not preempted. See Livadas v. Bradshaw, 512 U.S. 107, 123 (1994); Lueck, 471 U.S. at 211.

Within this rubric, we extract two instances in which preemption has been held to occur. "Various circuits, including this one, have recognized that a claim may be preempted under the LMRA either because it depends on interpretation of a CBA or because the claim is founded on the CBA." Bluffton, 186 F.3d at 862 (citations omitted). So, preemption occurs, first, if the state claim is "founded directly on rights created by [the CBA]." Lingle, 486 U.S. at 410 n.10 (citing Caterpillar Inc. v. Williams, 482 U.S. at 394-95). And, second, preemption applies if the right is created by state law, rather than the CBA, and application of the law is "substantially dependent on analysis" of the CBA. Id. When liability is created by state law, independent of the CBA, a court must determine whether the CBA needs to be interpreted or if a quick look is enough. See Loewen Group Int'l, Inc. v. Haberichter, 65 F.3d 1417, 1421 (7th Cir. 1995).

The employees concede that our recent opinion in Bluffton is controlling. Bluffton held, in part, that plaintiffs' Indiana mechanic's liens were preempted by sec. 301 of the LMRA. The employees, however, respectfully ask us to reexamine Bluffton. Given their request, we reiterate the importance of stare decisis.

The most complex relationship is between a court and its own previous decisions. A court must give

considerable weight to those decisions unless and until they have been overruled or undermined by the decisions of a higher court, or other supervening developments, such as a statutory overruling. But it is not absolutely bound by them, and must give fair consideration to any substantial argument that a litigant makes for overruling a previous decision.

Colby v. J.C. Penney Co., Inc., 811 F.2d 1119, 1123 (7th Cir. 1987). We require compelling reasons to overturn Circuit precedent. See Mid-America Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1364 (7th Cir. 1996). There has been no higher court or statutory overruling of Bluffton, and ours is the sole Circuit to address whether a state's mechanic's lien law is preempted by sec. 301. Further, no other courts have discussed Bluffton. With this in mind, we turn to the employees' arguments.

The employees argue that Bluffton failed to adequately address our prior decisions in Atchley v. Heritage Cable Vision Assocs., 101 F.3d 495 (7th Cir. 1996) and National Metalcrafters v. McNeil, 784 F.2d 817 (7th Cir. 1986). They read these cases as holding that state claims are preempted only if interpretation of a CBA is necessary. Therefore, they believe if we reexamine these decisions, we will find that the law holds that federal preemption ought not apply if the claim is merely founded on the CBA, and correlatively, that preemption ought apply only if the state claim requires interpretation of the CBA. Under this view of the law, the employees contend that while their rights to the vacation pay are founded on the CBA, the amount owed is undisputed, and thus, no interpretation of the CBA is required. Accordingly, since no interpretation is required, sec. 301 does not preempt their liens. In essence, they ask whether, in light of past case law, the "or" in Bluffton should have been an "and."/1 See Bluffton, 186 F.3d at 862 ("[A] claim may be preempted under the LMRA either because it depends on interpretation of a CBA or because the claim is founded on the CBA.") (citations omitted).

Identical to the employees in this case, the Bluffton employees conceded that their liens were founded on the CBA. See 186 F.3d at 862-63 n.5. They also argued that since their state claims did not require interpretation of the CBA, their liens were not preempted. See id. at 862. We, however, reasoned that since the claims were "founded on the CBA," it was "not necessary for us to determine the extent to which the claims require[d] an analysis of the CBA's terms." Id. at 862-63 n.5 (emphasis added).

The Bluffton employees relied on the "passage in Lingle that states that 'an application of state law is preempted by sec. 301 . . . only if such application requires the interpretation of a [CBA].'" 186 F.3d at 862 (emphasis added). The employees in this case rely on the same passage to argue that preemption should apply only when an interpretation is necessary. The employees' strategy seems to be to seek reversal of the founded on language in Bluffton, and wedge this case into the interpretation prong, in hopes of salvaging their liens. We do not agree that the preemption inquiry should be reduced to the interpretation prong. We reemphasize:

We cannot accept the employees' submission that the sole test for preemption is whether the claims require analysis of the CBA's terms. Lingle was not a case in which the CBA formed the basis for the claim. Therefore, the Court did not need to emphasize that claims founded on a CBA are preempted. The Court understandably examined only whether the claim in that case, retaliatory discharge for filing a worker's compensation claim, required an examination of the CBA.

Bluffton, 186 F.3d at 862. Therefore, we read the "or" in Bluffton as an "or."

Moreover, we disagree with employees' interpretation of our prior cases. In Atchley, the employer delinquently paid wage increases required by the CBA. See 101 F.3d at 497. An Indiana wage payment statute created a penalty for failure to pay wages within 10 days of when due. See id. at 497-98. We examined whether the statutory claim depended on an interpretation of the CBA, and found the claims preempted because resolution was "substantially dependent on analysis of the CBA." Id. at 500. The analysis in Atchley centered on the interpretation prong because the statute created an independent state right, penal and nonnegotiable in nature, and did not involve a right founded directly on the CBA. As in Lingle, the Atchley court had no reason to discuss the "founded on" prong. And, as we explained in Bluffton, the fact that it did not discuss the "founded on" prong does not mean that the "sole test" for preemption is the interpretation prong. See 186 F.3d at 862.

In National Metalcrafters, employees brought suit under the Illinois Wage Payment and Collection Act to force their employer to pay vacation benefits owed under the CBA. See 784 F.2d at 820. We found the claims preempted because resolution of the state cause of action required interpretation of the CBA. See id. at 824. The statute created an independent state

cause of action to recover entitlements due under the CBA, and we found that interpretation of the CBA was necessary to resolution. Further, it should be noted that, while still valid law, National Metalcrafters was decided before Caterpillar and Lingle clarified the categories we rely on here. Atchley and National Metalcrafters are inapplicable because they involved causes of action created by state law and required interpretation of the CBAs. This case does not involve an independent state cause of action.

The employees ask that, if we decline to overrule Bluffton (as we do), we carve a distinction based on the facts. Again, they argue that the validity of the liens is not at issue because the amount owing has been stipulated by all parties, and thus, no interpretation of the CBA is necessary, so the question remaining is merely one of priority under Indiana property law. We disagree. This case is factually the same as Bluffton. The sole difference is in Bluffton the employees argued that only a "brief analysis" of the CBA was needed, instead of none, as the employees here postulate. See 186 F.3d at 862 n.5. Despite this semantic variation, there is no indication in Bluffton that the amount owing was in dispute. And, whether the amount was disputed was not determinative. Certainly, the Bluffton employees' liens listed the amounts they were owed under the CBA. This case, like Bluffton, is actually a contractual action by employees to enforce the CBA breached by Bentz. This is a federal claim "dressed in state-law clothing." Atchley, 101 F.3d at 500. Section 301 "creates a federal remedy for the breach of a [CBA]. The remedy is exclusive; no action to enforce such an agreement may be based on state law." National Metalcrafters, 784 F.2d at 823 (citations omitted).

The employees misconstrue the nature of mechanic's liens./2 The Indiana mechanic's lien statute does not create an independent substantive cause of action for vacation pay; rather, it provides a state statutory remedy against an employer who breaches a contractual obligation to pay earned monies. The statute's utility to the employees is directly dependent on underlying contractual rights created by the CBA. While the parties do not dispute that the employees are owed $12,700.38, we reckon that drawing a distinction with Bluffton on this basis would be unsound. It would encourage employers to avoid liability by simply disputing the amount owed. Cf. Antol v. Esposto, 100 F.3d 1111, 1123 (3d Cir. 1997) (Mansmann, J., dissenting).

Here, as in Bluffton, "plaintiffs are attempting

to enforce their rights under the CBA with a state remedy that would give their liens priority in a bankruptcy proceeding. Because the claims are founded on the CBA, they are preempted whether or not they require analysis of the CBA's terms." 186 F.3d at 862.

CONCLUSION

We hold that the employees' state mechanic's liens are preempted by sec. 301 of the LMRA. The district court's order is AFFIRMED.


/1 Or, as employees' counsel asked the Bankruptcy Court, "whether there would be preemption under Section 301 of the [LMRA] if a claim is simply grounded in a [CBA] or if it then--or if it also requires not only grounding, but an interpretation." Summ. J. Hr'g Tr., Sept. 27, 1999, at 3.

/2 This is not a case in which plaintiffs are trying to enforce the arbitration decision, and the CBA need only be consulted to calculate damages. The employees have not exhausted their contractual remedies under the CBA, namely arbitration.




EVANS, Circuit Judge, dissenting.  Stare decisis, as Judge Bauer appropriately notes, is extremely important, and Bluffton Casting is squarely on point. But in my view, Bluffton Casting, born just 15 months ago, is clearly wrong. So this is one of those rare situations where stare decisis should not carry the day. Instead, we should cut our losses and reject Bluffton Casting before it grows older.

As I see it, Bluffton Casting is inconsistent with Atchley, National Metalcrafters, Livadas, and Lingle. The result is that unionized workers (who have a CBA) lose out in a situation like this, whereas nonunionized workers (with no CBA) can file a state mechanic's lien and jump to the front of the creditors' queue. The purpose of federal preemption is to ensure the uniform interpretation of CBAs, but that purpose isn't served when no interpretation of a CBA is required. In this situation, I don't see how an Indiana law that preferences unpaid workers over an unpaid bank interferes with consistent federal law governing labor agreements between employers and unions.