In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4133

United States of America,

Plaintiff-Appellee,

v.

James P. Walton,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 99 CR 141--Rudy Lozano, Judge.

Argued May 11, 2001--Decided June 28, 2001


   Before Bauer, Rovner and Evans, Circuit
Judges.

   Bauer, Circuit Judge.  James P. Walton
was convicted by a jury on one count of
possession of child pornography in
violation of 18 U.S.C. sec.
2252(A)(a)(5)(B), and one count of
receiving child pornography in violation
of 18 U.S.C. sec. 2252A(a)(2). In
determining his sentence, the district
court applied various enhancements under
the Sentencing Guidelines, including a
four-level enhancement under U.S.S.G.
sec. 2G2.2(b)(3) for receiving an image
which "portrays sadistic or masochistic
conduct or other depictions of violence."
Walton challenges the enhancement and
asks us to vacate his sentence and to
remand for further proceedings. For the
reasons set forth below, we affirm
Walton's sentence.

BACKGROUND

   Walton was an employee of Purdue
University who worked at the University's
Herrick Laboratories. The University has
a large number of individual computers
which are connected with one another and
with Purdue's Telecommunications Center
through various computer servers, and
which offer internet access. In November
of 1997, Joshua Bussert--the systems
administrator at Herrick Labs and

Walton's immediate supervisor--performed a routine back-up of the network server. He did this by copying to a back-up tape all of the files stored in the computers connected to the server (including Walton's workstation computer). When Bussert compared the files contained on the back-up tape to those contained in the original computers, he noticed that a large number of files were present on the back-up tape which were not longer present on the original computer space. Investigating this matter further, Bussert discovered that 99% of the missing files came from one location on the server, a location that was assigned to Walton. He also observed that these files were organized into various directories which carried different labels, some of which suggested to him that the files contained child pornography. For example, one of the directories, which contained a file named "14-year-old model," was labeled "users\jwalton\james\stories\incest." Another directory was labeled "users\jwalton\james\stories\pedophilia."

Bussert notified the Purdue University Police Department of his discovery. At the request of the University police, Scott Ksander, the Associate Director of Purdue's computer center, examined the hard drive on Walton's workstation computer. Ksander discovered several deleted files, and hundreds of "active" (non-deleted) files which contained sexually explicit images.

During an interview with the Chief of the University Police, Walton provided a voluntary recorded statement in which he admitted downloading child pornography from the internet, including pictures of children as young as five or six years old. Walton also admitted that after he downloaded the pornographic files, he created subdirectories to store and organize the files. On October 26, 1998, FBI Special Agent Bruce Guider interviewed Walton. During the interview, Walton admitted that he searched the internet for files involving pedophilia and child pornography, and that he downloaded approximately 50-150 such images during a period of his life when pedophilia was of interest to him. A federal grand jury subsequently indicted Walton on one count of possession of child pornography and one count of

receiving child pornography. Walton pleaded not guilty to the charges and his case went to trial.

At trial, however, Walton told a different story. He testified that he used a newsgroup reader program called "Agent" to access pornography sites, some of which contained child pornography. However, he claimed that he downloaded files in bulk without viewing them all, that he deleted any files that appeared to contain child pornography, and that he never viewed any images of children performing sex acts. He stated that the child pornography images which were found on his computer "came with the downloads." Further, Walton asserted that when he downloaded all of the files available from the newsgroup entitled "alt.sex.pedophilia," he thought that the newsgroup involved a foot fetish, not child pornography, and that he did not discover that they contained child pornography until two to three weeks later. Nevertheless, Walton admitted during cross-examination that he did not delete the images. When asked why, he stated that he might have been called away from his desk and forgotten about the images. Finally, when asked how the "incest" and "pedophilia" subdirectories were created, Walton testified that they were created by an executable or "zip" file which was attached to one of the messages that he had retrieved. Walton denied having anything to do with the creation of the subdirectories.

The government called Mark Sidell, who wrote and developed the Agent newsreader program, and FBI forensic computer examiner Russell Fox. Both witnesses testified that the files on Walton's computer could only have gotten there because a user of the computer employed a series of specific manual commands to retrieve and store the files. Both also testified that the Agent program could not have organized the network file space into subdirectories on its own without user command. Moreover, Fox testified that the "audit trail" of the Agent program installed on Walton's computer (which records the newsgroups and files accessed by the program) revealed that of the many newsgroups available, the only newsgroup that had been accessed from Walton's computer was "alt.sex.pedophilia."

FBI examiners retrieved 325 non-deleted individual files which had been downloaded to Walton's computer from the "pedophilia" newsgroup. Fox testified that of the 325 images retrieved, every image that he examined "appear[ed] to be children . . . under the age of 18 engaged in some sex act or some other lascivious display." Trans. at 306. A number of printouts of these computer images were admitted as government's exhibits 10(a) and 10(b). Exhibit 10(a) consisted of 21 pages containing approximately 240 separate images which were retrieved from Walton's computer, and exhibit 10(b) was 31 pages long and contained approximately 352 separate images which were originally found on Walton's network server file space. The majority of the images contained in exhibits 10(a) and 10(b) depict young, prepubescent girls who are either engaged in sexually explicit conduct (some with adult males) or striking lascivious poses. These images were displayed on a screen at trial in full view of the judge and jury. One of the images in exhibit 10(a) depicts a prepubescent girl who is blindfolded and suspended from the ceiling by her wrists, with her ankles bound to her thighs.

The jury returned a verdict of guilty on both counts, and Walton proceeded to sentencing. In calculating Walton's sentence, the court determined Walton's base offense level to be 17, and then applied a number of guideline enhancements which brought his total offense level up to 27. One of the enhancements that the court applied was sec. 2G2.2(b)(3), which prescribes a 4-level increase for the offense of receiving child pornography "if the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence." Following the recommendation of the Probation Department in the Presentence Investigation Report, the court applied this enhancement based on the single image of the bound and blindfolded girl, which was introduced as part of government exhibit 10(a). During the sentencing hearing, Walton conceded that the image depicted the bondage of a girl under the age of 12, but he challenged the application of this enhancement to his case on the ground that the sec.

2G2.2(b)(3) enhancement requires that the defendant possess more than one image portraying sadism, masochism, or violent conduct. When the court asked Walton's counsel if that was the sole issue that Walton wished to raise regarding the sec. 2G2.2(b)(3) enhancement, he responded that "[t]he whole issue is that you have to have more than one [qualifying image]."

With a total offense level of 27 and a criminal history category of 3, Walton was eligible to receive between 87 and 108 months imprisonment. The court sentenced Walton at the low end of this range, imposing sentences of 60 months on count 1, and 87 months on count 2, to be served concurrently. Walton appeals his sentence, challenging only the district court's decision to enhance his sentence under sec. 2G2.2(b)(3).

DISCUSSION

Walton asserts that the district court did not make a finding on the record that the image in question depicted sadistic, masochistic or violent conduct under U.S.S.G. sec. 2G2.2(b)(3), and in light of this "error" Walton urges us to vacate his sentence and to remand with instructions for the district court to make such a finding. Walton maintains that the record is bereft of any indication that the district court ever even examined the image in question, much less that it concluded (upon analyzing the image and applying the proper legal standards) that it depicted sadism, masochism or violence as contemplated by sec. 2G2.2(b)(3). Walton claims that the sentencing record reveals only the state ment that the single image in question "contained bondage, a young girl under the age of 12 years of age." The guideline in question does not define the terms "sadistic," masochistic" or "violent conduct," and the district court made no effort to come up with a definition and to evaluate the image in question in light of it. Indeed, Walton argues that the record does not show that the government made any attempt to prove that the picture was sadistic, masochistic or violent in nature beyond merely describing the picture as "containing bondage." Walton suggests that the court merely assumed that the bondage of a young girl was sadistic,

masochistic or violent within the meaning of sec. 2G2.2(b)(3) as a matter of law, and that the case law construing the section does not support this approach. Walton notes that the enhancement that he received under sec. 2G2.2(b)(3) resulted in between 16 and 27 months additional imprisonment for him, and he argues that such a substantial enhancement cannot be based on a "mere assumption." Therefore, Walton urges us to vacate his sentence and to remand for the fact-finding and analysis that the law requires.

In spite of Walton's wishes, we cannot reach the merits of his argument because he waived the argument during the sentencing hearing. Waiver occurs when a defendant "intentionally relinquishes or abandons a known right." See United States v. Harris, 230 F.3d 1054, 1058 (7th Cir. 2000). A waiver is "the manifestation of an intentional choice not to assert [a] right," distinguishing it from forfeiture, which is an accidental or negligent omission (or "an apparently inadvertent failure to assert a right in a timely fashion"). See United States v. Cooper, 243 F.3d 411, 416 (7th Cir. 2001). While forfeited issues are reviewable on appeal for plain error, a waived issue is unreviewable because a valid waiver leaves no error to correct and extinguishes all appellate review of the issue. Cooper, 243 F.3d at 415; Harris, 230 F.3d at 1058-59. We have found waiver where "either a defendant or his attorney expressly declined to press a right or to make an objection" See Cooper, 243 F.3d at 416 (citations omitted). See, e.g., Harris, 230 F.3d at 1059 (holding that a defendant waived any objection to the district court's failure to adjust his sentence downward two levels pursuant to U.S.S.G. sec.sec. 5C1.2 and 2D1.1(b)(6) where the PSR did not mention these guideline sections and where both the defendant and his attorney when queried by the district court "affirmatively stated that they had no objections to the PSR" apart from another, different objection); United States v. Richardson, 238 F.3d 837, 841 (7th Cir. 2001) (holding that a defendant waived an objection to a sentencing enhancement where at sentencing the court asked the defendant's lawyer whether he had an objection to the enhancement and the lawyer said "no"); United States v. Staples, 202 F.3d 992, 995 (7th Cir.

2000) (holding that the defendant waived his right to appeal the calculation of his criminal history at his sentencing hearing where the defendant had advanced notice of the content of the PSR and an opportunity to object but where his attorney stated during the sentencing hearing that neither he nor the defendant had any objections to the PSR); United States v. Valenzuela, 150 F.3d 664, 667–78 (7th Cir. 1998) (holding that the defendant waived his right to appeal the issue of whether he had dealt crack cocaine as opposed to some other form of cocaine base where the defendant's counsel "carelessly" conceded at sentencing that the defendant had dealt crack and did not include any limiting language in his concession); see also United States v. Scanga, 225 F.3d 780, 783 (7th Cir. 2000); United States v. Redding, 104 F.3d 96, 99 (7th Cir. 1996).

   Applying these standards, it is clear that Walton has waived the argument that he raises on appeal. In response to the Probation Department's recommendation that Walton's sentence be enhanced under sec. 2G2.2(b)(3), Walton filed a written objection admitting that he had downloaded one image depicting bondage, but arguing that the enhancement applied only to those defendants who receive three or more images depicting sadism, masochism, or other violent conduct. Walton's written objections raised no other issue regarding the application of sec. 2G2.2(b)(3). Moreover, after admitting during the sentencing hearing that "there was one picture that continued [sic] bondage, a girl under the age of 12 years of age," Walton's counsel affirmatively renounced any argument against the application of sec. 2G2.2(b)(3) save for the argument raised in his previously filed written objections. When the district court asked, "[c]ounsel, is the sole issue here whether or not you have to have more than one [qualifying image]?," Walton's counsel responded, "[t]he whole issue is that you have to have more than one." By expressly disavowing any other objection, Walton's counsel waived appellate review of the argument he raises on appeal. See Harris, 230 F.3d at 1059. While the mere failure to make a particular objection on a specified ground during a sentencing hearing will typically result in plain error review on appeal, see United States

v. McClellan, 165 F.3d 535, 551-52 (7th Cir. 1999), Walton's counsel did more than this; he affirmatively indicated that his argument that sec. 2G2.2(b)(3) required more than one qualifying image was the sole objection that he was raising regarding the application of the enhancement. This may have been a sound tactical decision, and we will not "override the clearly expressed wish of a party or his lawyer, which may be backed by excellent strategic reasons, not to invoke a particular right." Richardson, 238 F.3d at 841. Moreover, the record suggests that the district court did not expressly find that the image was sadistic, masochistic or violent within the meaning of sec. 2G2.2(b(3) because Walton's counsel clearly implied that he was not contesting that issue. A party may not by his own actions lull the court into believing that an express finding is unnecessary and then object when it makes no such finding.

Walton also challenges the manner in which this Circuit determines a defendant's eligibility to receive the sec. 2G2.2(b)(3) sentencing enhancement. In Richardson, we held that "liability for receiving violent child pornography is strict," see 238 F.3d at 840, meaning that once a defendant has been convicted of knowingly receiving child pornography under 18 U.S.C. sec. 2252(a)(2), a court may enhance his sentence under sec. 2G2.2(b)(3) if it finds that some of the child pornography received by the defendant involves "sadism, masochism, or other violent conduct," even if it does not find that the defendant intended to receive such images. Walton urges us to overrule Richardson, arguing that the holding is inconsistent with the underlying statute, with Supreme Court precedent, and with decisions of the 5th and 11th Circuits. Specifically, Walton notes that 18 U.S.C. sec. 2252 proscribes only the knowing receipt and possession of child pornography, and that in construing 18 U.S.C. sec. 2252(a), the Supreme Court determined that Congress intended the term "knowingly" to "extend[] both to the sexually explicit nature of the material and to the age of the performers." See United States v. X-Citement Video, Inc., 513 U.S. 64, 78 (1994). In so holding, the Court relied on prior precedent which established that common law offenses against the state,

the person, property, or public morals "presume a scienter requirement in the absence of express contrary [Congressional] intent." See id., at 71-72 (citing Morissette v. United States, 342 U.S. 246, 255 (1952)). After concluding that a violation of sec. 2252 was akin to such a common law offense, the Court applied Morissette and its progeny and ruled that "the presumption in favor of scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct." X-Citement Video, 513 U.S. at 72. Therefore, Walton argues that holding a defendant strictly liable for receipt or possession of sadistic, masochistic, or violent child pornography without requiring the government to prove that the defendant intended to receive or possess child pornography of such a character punishes conduct that Congress did not intend to punish, and is therefore inconsistent with the Supreme Court's reading of the statute that the guideline section implements. Moreover, Walton points to the decisions of the 5th and 11th circuits, which hold or assume that enhancement under sec. 2G2.2(b)(3) has an intent requirement. See, e.g., United States v. Tucker, 136 F.3d 763, 764 (11th Cir. 1998); United States v. Kimbrough, 69 F.3d 723, 734 (5th Cir. 1995). In light of all of this, Walton asks us to vacate his sentence and to remand to the district court for a determination of whether he knowingly and intentionally obtained an image depicting sadistic, masochistic or violent conduct under sec. 2G2.2(b)(3).

We deny Walton's request for two reasons. First, he waived the argument during the sentencing hearing. As we have noted, Walton told the sentencing court that the "whole issue" that he was raising with respect to the application of sec. 2G2.2(b)(3) to his sentence was the question of whether that guideline section required the defendant to receive more than one qualifying image. In so doing, he affirmatively abandoned all other arguments against the application of the enhancement in his case. See Harris, 230 F.3d at 1059; see generally Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 139 (3d Cir. 2000) (citation omitted) (declining to entertain a challenge to the court's opinion in a prior case where, inter

alia, the appellant failed to raise the issue below and therefore waived it on appeal). Second, even if we were to review Walton's legal challenges to Richardson de novo, we would find them unavailing. We may not overturn Circuit precedent without compelling reasons. See In re Bentz Metal Prods. Co., Inc., 231 F.3d 1029, 1033 (7th Cir. 2000) (vacated on other grounds, No. 00-1320, slip op. (7th Cir. June 7, 2001)). While we are not absolutely bound by the holdings in our prior decisions and "must give fair consideration to any substantial argument that a litigant makes for overruling a previous decision," see id. (quoting Colby v. J.C. Penney Co., Inc., 811 F.2d 1119, 1123 (7th Cir. 1987)), we are obliged to "give considerable weight to [our prior] decisions unless and until they have been overruled or undermined by the decision of a higher court, or other supervening developments, such as astatutory overruling." Id. There have been no such supervening developments here, and Walton gives us no good reason, much less a "compelling" reason, to overturn Richardson. Richardson is fully consistent with X-Citement Video, and contrary to Walton's suggestion it does not eliminate or diminish the scienter requirement of 18 U.S.C. sec. 2252. Indeed, we emphasized this very point in Richardson by noting that because Richardson was convicted of knowingly receiving child pornography under 18 U.S.C. sec. 2252(a)(2), the "usual requirement that mens rea be proved to convict a person of a serious offense" was satisfied. See Richardson, 238 F.3d at 840. We were careful to note that it was his conviction for knowing receipt of child pornography that exposed Richardson to the statutory maximum of 15 years, and that the application of sec. 2G2.2(b)(3) merely "enhanced his sentence within that range to reflect the fact that receiving bondage and torture pictures aggravates the offense." See id. Therefore, Richardson did not flout X-Citement Video's ruling that "the presumption in favor of scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct"; rather, it merely authorized the enhancement of punishment (within the prescribed statutory maximum) for conduct that had already been determined to be knowingly criminal. For the same reason, applying Richardson in this case and

enhancing Walton's sentence under sec. 2G2.2(b)(3) without requiring any proof that Walton intentionally received images depicting sadism, masochism, or other violent conduct does not deprive Walton of sec. 2252's scienter requirement. As the government notes, Walton's knowledge and intent regarding his receipt and possession of prohibited child pornography has been proven. His knowledge that he received and possessed such pornography was an element of the charged offense, and in convicting Walton the jury necessarily found that he had the requisite intent. Indeed, Walton does not appeal the fact of his conviction or argue that the evidence that he intended to receive and possess child pornography was insufficient to sustain the conviction. Therefore, the application of the sentencing enhancement under sec. 2G2.2(b)(3) did not somehow skirt the statutory intent requirement, but merely increased the punishment within the range authorized for a proven violation of the statute (which entails proof of the requisite intent). In short, Walton was not convicted of a strict liability crime (in violation of X-Citement Video), but instead was merely subject to a strict liability sentencing enhancement. Cf. United States v. Singleton, 946 F.2d 23, 26 (5th Cir. 1991).

In addition, the fact that other circuits have come to a different conclusion and have imposed an intent requirement on sec. 2G2.2(b)(3) is not a sufficiently compelling reason, standing alone, to prompt us to overturn Richardson. We decided Richardson only a few months ago, at which time no judge in active service voted to hear the case en banc even though every judge was aware of the circuit split that the opinion would create. See Richardson, 238 F.3d at 840–41. Upon reconsidering Richardson, we find it to be well-reasoned and based upon the sound observation that sentencing enhancements are frequently imposed on the basis of strict liability or on the basis of the degree of harm caused by the conduct at issue rather than the defendant's intentions. See, e.g., United States v. Fry, 51 F.3d 543, 546 (5th Cir. 1995) (affirming the enhancement of a defendant's sentence under sec. 2K2.1(a)(3) based upon possession of a machine gun despite the argument that the defendant did not know

that the gun he possessed had become a machine gun by alteration); United States v. Williams, 49 F.3d 92, 93 (2d Cir. 1995) (affirming a sentencing enhancement under sec. 2K2.1(b)(4) for possession of a firearm with an altered or obliterated serial number where the defendant argued that he was unaware of the condition of the serial number, and ruling that sec. 2K2.1(b)(4) is a strict liability provision); Singleton, 946 F.2d at 25-27 (holding that an upward adjustment could be assessed under sec. 2K2.1(b)(1) against a felon who possessed a stolen gun whether or not he knew the gun was stolen). Therefore, even if he had not waived his arguments, we would decline Walton's invitation to overrule Richardson.

CONCLUSION

For the foregoing reasons, we AFFIRM Walton's sentence.